# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **QUILIE ZEIGLER,** | : | CIVIL NO. 1:16-CV-1895 |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **CORRECT CARE SYSTEMS**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Quilie Zeigler ("Zeigler"), an inmate currently confined at the Smithfield State Correctional Institution in Huntindgon, Pennsylvania ("SCI-Smithfield"), commenced this civil rights action on August 26, 2016, in the Court of Common Pleas of Huntingdon County. (Doc. 1-2). The action was subsequently removed to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 9). Named as defendants are Correct Care Solutions, LLC and James F. Frommer, Jr., D.O. (Id.) Before the court is defendants' partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 11). For the reasons set forth below, the partial motion to dismiss will be granted in part and denied in part.

## I. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient

2

to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## II. Allegations of the Amended Complaint

Zeigler alleges that defendants were deliberately indifferent to his serious medical needs and negligent by failing to monitor his heart after his arrival at SCI-Smithfield. (Doc. 9, ¶¶ 7-25). Specifically, Zeigler alleges that he arrived at SCI-Smithfield with a preexisting heart condition. (Id. at ¶ 13). Zeigler allegedly informed Dr. Frommer about his preexisting heart condition and stated that his heart should be monitored. (Id. at ¶¶ 13-14).

In December 2015, Zeigler alleges that he requested monitoring of his heart, or use of a heart monitor. (Id. at ¶ 15). Dr. Frommer allegedly informed Zeigler that monitoring of his heart was not necessary. (Id.) Zeigler avers that Dr. Frommer never ordered monitoring of his heart. (Id. at ¶ 17). Medical personnel purportedly advised Zeigler that he had to obtain certain cardiology records related to his defibrillator prior to any heart monitoring. (Id. at ¶ 16).

On February 24, 2016, Zeigler presented to the medical department with complaints of chest pain and difficulty breathing. (Id. at ¶ 18). Zeigler was transported to an outside hospital and underwent a procedure to replace his cardiac stents. (Id. at ¶ 19).

3

Zeigler alleges that Correct Care and Dr. Frommer breached their contractual agreement by failing to monitor his heart and failing to refer him to a specialist for treatment. (Id. at ¶ 20). Zeigler further alleges that Correct Care breached its contractual obligations to monitor his heart and obtain his medical records. (Id. at ¶ 21). He alleges that Correct Care and its employees still refuse to monitor his heart condition. (Id. at ¶ 23).

### III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

#### A. Eighth Amendment Claim against Correct Care

Defendants argue that Zeigler's Eighth Amendment claim fails as a matter of law because vicarious liability is not cognizable under § 1983, and Zeigler

improperly alleges respondeat superior liability against Correct Care. (Doc. 12, at 2-4).

Correct Care provides healthcare services to inmates incarcerated within the Pennsylvania Department of Corrections ("DOC"). (Doc. 9, ¶ 6). Under § 1983, a private corporation contracted by a prison to provide healthcare for inmates cannot be held liable for Eighth Amendment violations on a respondeat superior theory. Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003). Rather, pursuant to Monell, a private corporation can be held liable for constitutional violations only if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations); Natale, 318 F.3d at 584 (applying Monell to a private company providing medical services to inmates). See also Weigher v. Prison Health Servs., 402 F. App'x 668, 669-70 (3d Cir. 2010) (nonprecedential) (noting that a private corporation providing medical service at a state correctional facility cannot be held liable under a theory of respondeat superior in a § 1983 suit). Thus, to prevail on his § 1983 claims against Correct Care, Zeigler must establish that there "there was a relevant [Correct Care] policy or custom, and that the policy caused the constitutional violation" for which he seeks relief. See Natale, 318 F.3d at 583-84. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir.1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481,

106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)), superseded in part by statute, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1072, § 102. A course of conduct not expressly authorized by law becomes a "custom" when the challenged "practices of state officials [are] so permanent and well settled" as to virtually constitute law. Monell, 436 U.S. at 690, 98 S.Ct. 2018. In order to establish Correct Care's § 1983 liability under either a policy or a custom argument, "it is incumbent upon [plaintiff] to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." Andrews, 895 F.2d at 1480 (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). The "policymaker" is the person who "has final, unreviewable discretion to make a decision or take an action," and who is or is not a policymaker is determined by reference to state law. Andrews, 895 F.2d at 1481.

Defendants argue that "Plaintiff has not averred that Correct Care Solutions, LLC had a policy or practice of deliberate indifference to prisoners' serious medical needs. As this defendant cannot legally be held liable without allegations which might bring it within Monell, Plaintiff has necessarily failed to establish a claim upon which relief can be granted." (Doc. 12, at 4). Zeigler has failed to provide any response to defendant Correct Care's argument. See (Doc. 13).

Zeigler's allegations of Monell liability are purely based on vicarious liability and respondeat superior. Zeigler broadly alleges that "CCS and their employees" were deliberately indifferent to his serious medical needs. (Doc. 9, ¶¶ 23-25). Zeigler does not identify with specificity any municipal policy, practice, pattern, or custom of permitting prison staff to engage in constitutional violations. See

6

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). Moreover, there is nothing in the amended complaint that demonstrates that the purported policy was the "moving force behind the injury alleged," i.e., the replacement of Zeigler's stents. Berg v. County of Allegheny, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997)). Consequently, Zeigler cannot maintain a Monell claim against defendant Correct Care, and this claim will be dismissed.

### B. Breach of Contract Claim

Defendants seek dismissal of the breach of contract claim because Zeigler is not a third-party beneficiary of the contract between Correct Care and the DOC[1] and, therefore, he does not have standing to sue for breach of contract under Pennsylvania law. (Doc. 12, at 5-9). The court agrees.

In Pennsylvania, third party beneficiary law is summarized as follows:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, Spires [v. Hanover Fire Ins. Co.], supra, [364 Pa. 52, 70 A.2d 828 (1950)] unless the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983).

---

[1] Defendants clarify that the contract was, in actuality, between Correct Care and the Commonwealth of Pennsylvania. (Doc. 12, at 5 n.1). However, in order to avoid confusion, defendants refer to the contract as between Correct Care and the DOC, as alleged in the amended complaint. (Id.) For purposes of this memorandum, the court will likewise refer to the contracting parties as Correct Care and the DOC.

7

Scarpitti v. Weborg, 609 A.2d 14, 150-517 (1992). The standing requirement "leaves discretion with the trial court to determine if recognition of third party beneficiary status would be 'appropriate.'" Guy v. Liederbach, 459 A.2d 744, 751 (Pa. 1983).

As stated, to confer express third-party beneficiary status, the parties to the contract at issue must explicitly state their desire to benefit the third party in the contract. Spires v. Hanover Fire Ins. Co., 70 A.2d 828, 830-31 (Pa. 1950), abrogated by Guy, 459 A.2d 744. Zeigler has not alleged that there was an express contractual intent to make him a third-party beneficiary of the relevant contract. The clear and unambiguous terms of the contract between Correct Care and the DOC do not contain any language that would imply an express statement that either Correct Care or the DOC intended to make inmates third-party beneficiaries to the contract. (See Contracts between Correct Care and the Commonwealth of Pennsylvania, available at: http://contracts.patreasury.gov/View.aspx?ContractID=283675; http://contracts.patreasury.gov/View.aspx?ContractID=324268; http://contracts.patreasury.gov/View.aspx?ContractID=333074). Thus, Zeigler lacks standing as an express third-party beneficiary to bring a breach of contract claim and cannot, as a matter of law, establish a plausible claim for relief.

Zeigler argues that because he is Pennsylvania DOC inmate, he was an intended third-party beneficiary to the contract between defendants to provide medical services to inmates. (Doc. 13, at 3). The case law is not in Zeigler's favor. Indeed, several courts have found that plaintiffs lack standing to sue for the type of violation Zeigler claims, "this is so even if Plaintiff deems or designates himself as a third-party beneficiary of [the] contract." Parker v. Gateway Nu-Way Found., 2010

8

WL 4366144, at *4 (D.N.J. Oct. 26, 2010); see also Maqbool v. University Hosp. of Medicine & Dentistry of N.J., 2012 WL 2374689, at *4 (D.N.J. June 13, 2012) (same); Green v. Corzine, 2011 WL 735745, at *4 (D.N.J. Feb. 22, 2011) (same); Brown v. Sadowski, 2009 WL 2182604, at *5 n.3 (D.N.J. July 20, 2009) ("Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to the state, since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the state might have with the prison officials"); Ali v. D.O.C., 2008 WL 5111274, at *5 (D.N.J. Nov. 25, 2008) (dismissing breach of contract claims because prisoner was not a third-party beneficiary to the contract between the prison and health services provider); Clifton v. Suburban Cable TV Co., 642 A.2d 512, 514-15 (Pa. Super. 1994), appeal denied, 649 A.2d 667 (Pa. 1994), cert. denied, 513 U.S. 1173 (1995) (although contract between state and cable company was intended to benefit incarcerated inmates who paid for the cable service, inmates, like other members of the general public, were not third-party beneficiaries). Zeigler's conclusory allegation that he was an intended third-party beneficiary is insufficient to support his claim. The court declines to recognize Zeigler as an intended third-party beneficiary with standing to assert a breach of contract claim. Therefore, the court will dismiss the breach of contract claim.

### C. Professional Negligence Claims

Defendants move to dismiss Zeigler's professional negligence claims because he did not timely file a certificate of merit ("COM"), as required by Pennsylvania Rule of Civil Procedure 1042.3. (Doc. 12, at 10-11). Rule 1042.3 requires a plaintiff alleging professional negligence to file a COM within sixty days of filing the

9

complaint. PA. R. CIV. P. 1042.3. The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell below acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed. PA. R. CIV. P. 1042.3(a)(1)-(3). Failure to file a certificate of merit is fatal to a plaintiff's claim. PA. R. CIV. P. 1042.7. A defendant seeking to dismiss for want of a certificate must first file written notice of their intent to do so, no sooner than thirty days after the complaint was filed. PA. R. CIV. P. 1042.6(a).

As a threshold matter, it is undisputed that Rule 1042.3 applies to this action. The Third Circuit has determined that the certificate of merit requirement is a substantive rule of Pennsylvania law, applicable to federal court actions under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Liggon-Redding v. Estate of Robert Sugarman, 659 F.3d 258 (3d Cir. 2011); Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008).

Pursuant to Pennsylvania law, "a court may consider two equitable exceptions when a plaintiff has improperly failed to file a COM: whether the plaintiff has substantially complied with Rule 1042.3 and whether the plaintiff has offered a reasonable explanation or legitimate excuse for failure to comply." Ramos v. Quien, 631 F. Supp. 2d 601, 611 (E.D. Pa. 2008) (citing Womer v. Hilliker, 908 A.2d 269, 276, 279 (Pa. 2006)). Federal courts have since applied these equitable

10

considerations to determine if a plaintiff who fails to timely file a certificate of merit may be relieved from the requirement if he provides a reasonable explanation or legitimate excuse. See Perez v. Griffin, 304 F. App'x 72, 74 (3d Cir. 2008) (observing that "failure to comply with Rule 1042.3 is not fatal to claims of professional liability if the Plaintiff can show 'reasonable excuse' for the noncompliance") (quoting Womer, 908 A.2d at 279-80)).

In the instant action, Zeigler was required to file a COM with an expert opinion that his medical treatment deviated from acceptable medical standards, and to show that the deviation was the proximate cause of the replacement of his cardiac stents. Zeigler's medical claims are not within the knowledge of lay persons, as they relate to allegations that defendants were negligent in providing medical care and their actions amount to medical malpractice. Specifically, Zeigler claims that he was not provided adequate treatment for his heart condition, which resulted in undergoing surgery to replace his cardiac stents. These claims are clearly "an integral part of the process of rendering medical treatment" which involves professional medical judgment which is beyond the realm of the lay person. Paige v. Holtzapple, 2009 U.S. Dist. LEXIS 73624, *10-11 (M.D. Pa. 2009) ("Where the conduct at issue constituted an integral part of rendering medical treatment, and involved diagnosis, care, and treatment by a licensed professional, . . . the action is one that is characterized as a professional negligence action requiring expert testimony."). It cannot be said that a decision of whether, when or what type of treatment should be provided "is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-

11

professional persons." Hightower-Warren v. Silk, 698 A.2d 52, 54 n.1 (Pa. 1997). Accordingly, a certificate of merit is required for Zeigler's professional negligence claims.

Zeigler filed his original complaint on August 26, 2016, and the amended complaint on July 5, 2017. (Docs. 1-2, 9). Zeigler did not file the requisite COM, and did not request an extension of time in which to do so. Unless Zeigler can show a reasonable explanation or legitimate excuse for his failure to timely file a COM, his professional negligence claims are subject to dismissal without prejudice. Zeigler suggests that he does not have access to his medical records. In the event that Zeigler has not been able to view his medical records, and thus has not been able to obtain a statement from a licensed processional regarding his medical care, Zeigler will be afforded the opportunity to file a COM that complies with Rule 1042.3.[2] Consequently, the court will deny defendants' partial motion to dismiss the professional negligence claims based on Zeigler's failure to file a certificate of merit.

## IV. Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d

---

[2] The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell below acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or, a statement that expert testimony is unnecessary for the plaintiff's claim to proceed. PA. R. CIV. P. 1042.3(a)(1)-(3).

113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). This is Zeigler's amended complaint. For the reasons set forth above, the court concludes that granting further leave to amend with respect to the Eighth Amendment claim against Correct Care and the breach of contract claim would be futile.

**V.    Conclusion**

Based on the foregoing, defendants' partial motion to dismiss will be granted in part and denied in part.

An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        March 26, 2018